Slip Op. 13 - 38

# UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| SWIFF-TRAIN CO., METROPOLITAN HARDWOOD FLOORS, INC., BR CUSTOM SURFACE, REAL WOOD FLOORS, LLC, GALLEHER CORP. and DPR INTERNATIONAL, LLC, | : : : : : : | |
| Plaintiffs, | : : | |
| v. | : : | Before: R. Kenton Musgrave, Senior Judge Court No. 12-00010 |
| UNITED STATES, | : : | |
| Defendant, | : : | |
| and | : : | |
| COALITION FOR AMERICAN HARDWOOD PARITY, | : : : | |
| Defendant-Intervenor. | : : | |

**OPINION**

[Remanding finding of material injury arising from imports of multilayered wood flooring from the People's Republic of China.]

Dated: March 20, 2013

*William Ellis Perry*, Dorsey & Whitney, LLP, of Seattle, WA, for plaintiffs. With him on the brief was *Emily Lawson*.

*Mary Jane Alves*, Attorney, Office of the General Counsel, U.S. International Trade Commission, Washington, DC, argued for defendant. With her on the brief were *James M. Lyons*, General Counsel, *Andrea C. Casson*, Assistant General Counsel and *Geoffrey S. Carlson*, Attorney. *Alexander V. Sverdlov*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington DC, also appeared for defendant.

*Jeffrey Steven Levin*, Levin Trade Law, P.C., Washington, DC, for defendant-intervenor.

Musgrave, Senior Judge:  This action is before the court on Plaintiffs' Rule 56.2 Motion for Judgment on the Agency Record.  Swiff-Train Co., Metropolitan Hardwood Floors, Inc., BR Custom Surface, Real Wood Floors, LLC, Galleher Corp., DPR International, LLC (collectively, "Plaintiffs") challenge the final determination of the U.S. International Trade Commission ("Commission") in *Multilayered Wood Flooring from China*, Inv. Nos. 701-TA-476 and 731-TA-1179 (Final), 76 Fed. Reg. 76435 (December 7, 2011) ("Final Determination"), *see also* Views of the Commission Majority (Confidential), Confidential Record Document ("CR") 525 ("*Views*").  Plaintiffs challenge the Commission's determination that the industry in the United States producing multilayered wood flooring ("MLWF") is materially injured by reason of imports from China that are sold at less than fair value ("LTFV"). The court has jurisdiction pursuant to 28 U.S.C. § 1581(c).

The court held an oral argument on the issues in this case on January 23, 2013. After due consideration of the parties' submissions, the administrative record and all other papers herein and for the reasons that follow the court remands to the Commission for analysis and reconsideration relating to its decision not to investigate domestic producers of hardwood plywood used for flooring, for further explanation of the impact the subject imports had on the domestic industry in light of collapse of the housing market during the period of investigation, and to re-evaluate whether the subject imports were a "but-for" cause of material injury to the domestic industry.  The court also remands so that the Commission may make findings on the issue of price suppression/depression.  The Commission's determination is upheld in all other respects.

**I.     Background**

MLWF is "composed of an assembly of two or more layers or plies of wood veneer(s) in combination with a core." *See Multilayered Wood Flooring from the People's Republic of China: Amended Final Duty Determination of Sales at Less than Fair Value and Antidumping Duty Order*, 76 Fed. Reg. 76690 (Dep't Commerce, Dec. 8, 2010) (Final) ("Final AD Order"). MLWF is a type of wood flooring product that is typically comprised of two to ten layers or plies that include a core sandwiched between a back or bottom layer and a face veneer surface of a desired wood species and finish. ITC Staff Report (Confidential) dated October 27, 2011, CR 507 ("Staff Report") at I-9.

On October 21, 2010, an *ad hoc* association of U.S. manufacturers of MLWF, the Coalition for American Hardwood Parity (Defendant-Intervenor here), filed a petition with the Commission and the Department of Commerce ("Commerce") alleging that the MLWF industry in the United States was materially injured or threatened with material injury by reason of less than fair value ("LTFV") MLWF imported from China. Commerce found that Chinese MLWF was being sold in the United States at LTFV. *See* Final AD Order, and *Multilayered Wood Flooring from the People's Republic of China: Countervailing Duty Order*, 76 Fed. Reg. 76693 (Dep't Commerce, Dec. 8, 2010) (Final CVD Order).

Following its own investigation, the Commission found that the domestic industry was materially injured by reason of Chinese MLWF imports. *Views* at 3. Six commissioners participated in the determination; four voted to find material injury and two dissented. *Id.* at 3 n.1. The Commission found that the domestic industry suffered from declining market share "due primarily to the significant volume of subject imports from China that is increasing

significantly relative to domestic production and apparent U.S. consumption. . . ." *Views* at 53-54. The subject imports significantly undersold domestic MLWF while the U.S. industry suffered declines in employment and wages and lost money throughout the period under investigation. *Views* at 54. "Based on all the foregoing trends, we find that there is a causal nexus between subject imports and the poor condition of the domestic industry and that the domestic industry is materially injured by reason of subject imports." *Views* at 54.

Two commissioners dissented from the Commission's *Views*. *Dissenting Views of Chairman Deanna Tanner Okun and Commissioner Daniel R. Pearson*, Dec. 5, 2011, CR 526 ("*Dissenting Views*"). The dissenting commissioners found no material injury by reason of the subject imports of MLWF. *Dissenting Views* at 36. The dissenters disagreed with the Commission's findings on several important points. The dissenters found that MLWF was "substitutable" and found attenuated competition between the domestic and imported products, because domestic and imported product tended to be sold in different channels. *Dissenting Views* at 4-6. The dissenters also disagreed with the Commission's findings on volume, price effects and the impact the subject imports had on the domestic producers of MLWF.

> We find that the record does not show a correlation between subject imports and the domestic industry's declining performance indicia during the period of investigation. The deterioration in the domestic industry's performance indicators coincided with the global economic downturn and the fall in residential housing construction appears to be demand driven, occurring while subject imports were decreasing overall during the period examined on an absolute basis.

*Dissenting Views* at 27.

## II.    Standard of Review

In reviewing the Commission's determination, the court will remand the Commission's determination if it is "unsupported by substantial evidence on the record, or

otherwise not in accordance with law. . . ." 19 U.S.C. § 1516a(b)(1)(B) (2000).

## III.   Discussion

### A. Composition of Domestic Like Product Industry

Plaintiffs argue that the Commission should have investigated producers of domestic hardwood plywood used for flooring as part of the domestic like product industry.[1] Defendant argues that this issue was not raised in a timely manner before the Commission and that there was little time for the Commission to perform such an investigation, even if it were warranted.[2] Plaintiffs briefed the issue before and after the Commission's final hearing, and the issue of whether hardwood plywood flooring was within scope was put before the Commission in June, 2011. Pl's Br. at 3-4, Reply Brief in Support of Plaintiff's Rule 56.2 Motion for Judgment on the Agency Record ("Pl's Reply") at 2-4.  The court finds that the issue was raised early enough in the proceedings to provide the Commission adequate time to address it, which it did. *See Views* at 8 n. 22.  Therefore, the court does not find requiring exhaustion of administrative remedies is appropriate here.  *See* 28 U.S.C. 2637(d), *Al Tech Specialty Steel Corp. v. U.S.*, 11 CIT 372, 377, 661 F.Supp. 1206, 1209-10 (1987); *cf. Ad Hoc Shrimp Trade Action Committee v. U.S.*, 33 CIT ___, ___, 675 F.Supp.2d 1287, 1300 (2009) ("[i]t is 'appropriate' for litigants challenging antidumping actions to have exhausted their administrative remedies by including all arguments in their case briefs submitted to Department of Commerce").

---

[1]     *See* 19 U.S.C. § 1677(10); Plaintiff's Rule 56.2 Memorandum in Support of Motion for Judgment Upon the Agency Record ("Pl's Br.") at 3.

[2]     Defendant's Opposition to Plaintiff's Motion for Judgment on the Agency Record ("Deft's Br.") at 6-9.

The scope of the MLWF LTFV investigation defines the product in part as follows:

> *Multilayered wood flooring is composed of an assembly of two or more layers or plies of wood veneer(s) in combination with a core.* The several layers, along with the core, are glued or otherwise bonded together to form a final assembled product. Multilayered wood flooring is often referred to by other terms, *e.g.*, "engineered wood flooring" or "*plywood flooring*." Regardless of the particular terminology, all products that meet the description set forth herein are intended for inclusion within the definition of subject merchandise.
>
> All multilayered wood flooring is included within the definition of subject merchandise, without regard to: dimension (overall thickness, thickness of face ply, thickness of back ply, thickness of core, and thickness of inner plies; width; and length); wood species used for the face, back and inner veneers; core composition; and face grade. *Multilayered wood flooring included within the definition of subject merchandise may be unfinished* (*i.e.*, without a finally finished surface to protect the face veneer from wear and tear) or ''prefinished'' (*i.e.*, a coating applied to the face veneer, including, but not exclusively, oil or oil-modified or water-based polyurethanes, ultraviolet light cured polyurethanes, wax, epoxy-ester finishes, moisture-cured urethanes and acid-curing formaldehyde finishes). * * *
>
> The core of *multilayered wood flooring may be composed of a range of materials, including but not limited to hardwood* or softwood veneer, particleboard, medium-density fiberboard (''MDF''), high-density fiberboard (''HDF''), stone and/or plastic composite, or strips of lumber placed edge-to-edge.

Final Antidumping Order, 76 Fed. Reg. at 76690 (emphasis added).[3]

Plaintiffs argue that the scope definition of MLWF "[is] so broad that hardwood plywood suitable for flooring plainly and necessarily [falls] within the definition". Pl's Br. at 3-

---

[3] After briefing was completed herein, plaintiffs provided supplemental information showing that the scope of the MLWF investigation uses almost identical language as that used in a more recent antidumping investigation involving hardwood plywood. Letter from Dorsey & Whitney, LLP, dated November 5, 2012, *citing Hardwood and Decorative Plywood from the People's Republic of China: Initiation of Antidumping Duty Investigation*, 77 Fed. Reg. 65172 (Dept. of Commerce, Oct. 25, 2012). This information is not part of the record before the court and the court declines to take judicial notice of it.

Court No. 12-00010                                                                                                          Page 7

4. Defendant and defendant-intervenor argue that hardwood plywood is outside the scope and therefore the Commission's decision not to include domestic manufacturers of hardwood plywood used for flooring should be sustained. Deft's Br. at 4-5, Defendant-Intervenor's Opposition to Plaintiffs' Rule 56.2 Motion for Judgment Upon the Agency Record ("Deft-Int's Br.") at 4-6.

Plaintiffs argued below that the Commission should investigate U.S. hardwood plywood producers as part of the domestic MLWF industry and provided the Commission with a list of domestic hardwood plywood producers. Post-Hearing Br., CR 496 at 15. The Commission declined to investigate whether domestic hardwood plywood was used as flooring and thus whether the producers involved should be included in the domestic like product industry. Pl's Br. at 7-8; Deft's Br. at 7 (the Commission "did not investigate such firms based on the record"). The Commission explained:

> [W]hereas the scope does not include hardwood plywood for flooring or the veneers peeled from plywood or logs, it does, for example, include as unfinished MLWF those products manufactured by pressing one or more layers of wood veneer to a hardwood plywood core that may or may not yet have a tongue and groove or click-and-lock profile, stain, and/or finish. . . .
>
> We note that the Importer Respondents [plaintiffs herein] do not ask the Commission to define the domestic like product broader than the scope to include hardwood plywood for flooring, and they allege no other basis to include firms producing hardwood plywood for flooring in the domestic industry. Under the statute, only producers of the domestic like product may be included in the domestic industry. As our reviewing court has stated, "[t]he statute clearly provides that 'the effect of . . . dumped imports shall be assessed in relation to the United States production of a *like product*.' 19 U.S.C. § 1677(4)(D) (emphasis added)." *General Motors Corp. v. United States*, [17 CIT 697, 702], 827 F.Supp. 774, 780 (1993). Thus, producers of hardwood plywood for flooring cannot be included in the domestic industry.

*Views* at 8-9 n. 22. The Commission states that the scope "includes hardwood plywood insofar

as it meets the scope definition, *i.e.*, 'unfinished MLWF . . . manufactured by pressing one or more layers of wood veneer to a hardwood plywood core.'"[4]  This statement begs the question posed by plaintiffs, and renders arbitrary the reasoning behind the Commission's refusal to investigate whether those producers should be included within the domestic like product industry.  The Commission admits that there is hardwood plywood that falls within the scope, but refuses to investigate that portion of the domestic industry.

The Commission's claim that pressing of a veneer to a hardwood core is required for plywood product to fall within the scope is unsupported by evidence on the record.  A veneer is "a thin slice of wood that is rotary cut, sliced or sawed from a log, bolt or flitch.  Veneer is referred to as a ply when assembled."  Final AD Order, 76 Fed. Reg. at 76690 n.2.  "Veneer" is not restricted to the outer layer of MLWF.  Staff Report, CR 507 at I-19 ("the core is typically composed of wood veneers").  Therefore, plywood always has an outer veneer, and thus could fall within the scope's definition of MLWF.  There is no factual basis for the Commission to distinguish hardwood plywood used for flooring from unfinished MLWF by finding that MLWF requires the addition of a veneer to a core.

The Commission is required to evaluate the entire domestic industry in making injury determinations.  *NSK Corp. v. United States*, 34 CIT ___, ___, 712 F.Supp.2d 1356, 1364 n.13 (2010), *citing Nevinnomysskiy Azot v. United States*, 32 CIT 642, 660, 565 F.Supp.2d 1357, 1373 (2008); *cf. Wheatland Tube Co. v. United States*, 21 CIT 808, 815, 973 F. Supp. 149, 158 (1997), *citing United States Steel Group v. United States*, 18 CIT 1190, 1197 n. 6, 873 F.Supp.

---

[4]     *See also* Deft's Br. at 4 n.3.

673, 683 n.6 (1994) (ITC does not have the authority to exclude from a like product determination merchandise corresponding to that within scope). As the scope itself states, "[a]ll products that meet the description set forth herein are intended for inclusion within the definition of subject merchandise." Final MLWF Antidumping Order, 76 Fed. Reg. at 76690.

The court finds that the Commission's definition of the domestic industry is not supported by substantial evidence and that it failed to evaluate the performance of the entire domestic like product industry in its investigation. While the court agrees that plaintiffs could have brought this particular argument to the Commission's attention earlier, it finds that the issue of the overlap between hardwood plywood for flooring and unfinished MLWF was before the Commission at least as early as June, 2011, well before its final decision was announced. On remand the Commission shall reopen the record to identify and evaluate whether domestic hardwood plywood manufacturers make product that is used for flooring. The Commission shall issue questionnaires to any producers so identified and make findings commensurate with any such new record evidence adduced from the questionnaires, after having given the parties time to comment on any evidence adduced or related findings.

**B. Material Injury Factors**

In finding whether the subject imports materially injured the domestic industry, the Commission must consider the volume, price effects and impact of the subject imports on domestic producers pursuant to 19 U.S.C. § 1677(7)(B). *USX Corp. v. United States*, 11 CIT 82, 84, 655 F. Supp. 487, 489 (1987). In addition to the factors listed therein, the Commission "may consider such other economic factors as are relevant to the determination regarding whether there is material injury by reason of imports." 19 U.S.C. § 1677(7)(B)(ii). After review of the

record the court finds that the Commission's findings of the significance of the volume of subject imports is supported by substantial evidence on the record, but the court finds that the Commission's discussion of the other statutory factors requires further discussion.[5]

**(i)      Price Effects Factor**

      **(a) Underselling**

In its review of the underselling factor, the Commission found that "quality and price are important factors in purchasing decisions in the U.S. market for MLWF." *Views* at 37. Due to "high substitutability" and its finding of a lack of "attenuated competition" the Commission concluded that "competition in the U.S. primarily depends on price." *Id.* at 37-38. The Commission reviewed factors relevant to underselling and found that "a majority of [the pricing data reported] show subject imports undersold the domestic like product throughout this period." *Id.* at 38 (footnote omitted).

The dissenting commissioners point out that price was second in importance to quality in purchasing decisions, and that respondents chose four other factors ahead of price when asked about each factor's importance in making purchasing decisions. *Dissenting Views* at 15. The dissenters conclude that price "is likely not the most important [factor] in most purchasing decisions." *Id.* The dissenters found mixed underselling and overselling during the period of investigation ("POI"). *Id.* at 16. Evidence showed domestic product undersold imported in products in which the domestic industry was most specialized, whereas the opposite

---

[5]    Plaintiffs dispute the Commission's refusal to find that the subject MLWF replaced non-MLWF products, but the court finds that the decision was supported by substantial evidence. *See* Pl's Br. at 25-29.

occurred in products where the Chinese product was most specialized. *Id*. The dissenters concluded there was attenuated competition and market segmentation "characterized by (a) traditional high volume products that are price sensitive and (b) higher value, lower volume products that are less price-sensitive". *Id*. The dissenters concluded from the data that there had not been significant underselling by the imported merchandise as compared with the price of domestic merchandise. *Id*. at 17.

The court finds that the Commission's conclusion that there was significant underselling of subject merchandise is supported by substantial evidence on the record. While the validity of the Commission's comparison of sales prices between the products is undermined by the lack of congruity between the volume of sales of 3 of the 8 products chosen for comparison, the data on 4 of the remaining 5 products showed significant underselling of Chinese vs. domestic like product.

### (b) Price Suppression

On the issue of price suppression, the Commission concluded that domestic MLWF "faced competition from a large and growing volume of substitutable MLWF that was lower priced and that the domestic industry lowered its prices, including for hand-scraped products." *Views* at 44. The Commission's conclusion depends primarily on evidence from one of the 8 products reviewed. Significantly, the Commission concluded only that there was "*evidence* of adverse effects on the domestic industry's MLWF prices," *id*. at 45 (emphasis added), and did not make an explicit finding of significant price depression (and no finding at all regarding price suppression).

The dissenters point out that for 6 of the 8 products reviewed, the domestic price

declines were modest. *Dissenting Views* at 17. Of the remaining 2 products, one Chinese product oversold the domestic product in 11 of 12 quarters reviewed. *Id*. Raw material prices declined during the period and the cost of goods sold to net sales ratio decreased over the period. *Id*. at 17-18. These other factors that may explain the price decline were not addressed by the Commission. The dissenters found "no evidence that subject imports prevented the domestic industry from increasing prices to a significant degree." *Id*. at 18.

Upon review of the record as a whole, the court finds that the Commission's finding on price suppression is not supported by substantial evidence because the finding rests on price information relating to only one of eight products reviewed, and evidence pointing to other reasons for the price reductions was not addressed in the Commission's *Views*. The court directs that on remand the Commission should make explicit findings on the effect of the subject imports on the price suppression and depression factors, discussing not only the factors cited in the Commission's *Views*, but also those economic issues addressed by the *Dissenting Views*.

  **(ii)**  **Impact on Affected Domestic Industry**

The Commission evaluates "impact" factors within the context of the business cycle and conditions of competition that are distinctive to the affected industry. 19 U.S.C. § 1677(7)(C)(iii). In assessing the impact of the subject MLWF imports on the domestic industry the Commission noted but did not further discuss the "severe downturn in macroeconomic conditions and in U.S. residential housing" which resulted in a 47% decline in the number of housing starts during the POI and a 12% decline in a leading home remodeling market indicator. *Views* at 25.

Although the general economic downturn and declining demand for MLWF

>contributed to the domestic industry's deteriorating performance from 2008 to 2009, as respondents argue, we find that the decline in demand associated with the downturn worked hand in hand with the subject imports in contributing to the domestic industry's deteriorating performance. We note that the domestic industry's performance was poor throughout the period under examination, including prior to the fall in demand, as subject imports held a very substantial share of the U.S. market from the beginning. Moreover, the domestic industry's loss of market share to imports of MLWF from subject producers in China is clearly not a function of demand.

*Id*. at 48-49. "[W]e do not find that the improvements in a few indicators of the domestic industry's performance are inconsistent with a finding of material injury by reason of subject imports."[6]

According to the dissenting commissioners, record evidence failed to demonstrate that trends in the domestic industry's performance were by reason of the subject imports. "The performance trends of the domestic industry do not correlate to the subject import volumes in any meaningful way." *Dissenting Views* at 23.

>[T]he better explanation for the financial condition of the domestic industry lies in the conclusion of the Commission's staff report, which states that '[t]o the extent that U.S. producers collectively generated gross profit throughout the period, the industry's pattern of consistent operating losses can in general be attributed to its inability to recover corresponding SG&A expenses.'

*Dissenting Views* at 24, *citing* Staff Report, CR 507 at VI-15. The dissenters cited correlations between the decline and recovery of the U.S. housing market and the profitability of the domestic MLWF industry. *Id*. at 25-26. "On the record in front of us, we cannot conclude that it was the subject imports that were responsible for the lower-than-expected demand; instead, we

---

[6] *Views* at 52. The Commission failed to make any findings with regard to the fifth statutory "impact" factor: magnitude of the margin of dumping on the domestic industry. 19 U.S.C. § 1677(7)(C)(iii)(V). The dissenters stated that the final dumping margins found by Commerce were "unusually low for the Chinese industry as a whole". *Dissenting Views* at 20.

conclude that it was the recession, with its negative effects centered in the housing industry, that was responsible for the lower demand and therefore, higher unit costs." *Id*. at 24.

Though it mentioned the effect of the collapse of the new housing and home remodeling markets on the domestic MLWF industry, the Commission did not discuss the industry's poor performance in relation to the overall trends that affected their business, other than the subject imports. Without an explanation of how the dramatic collapse of the home building and remodeling markets impacted sales of domestically produced MLWF the court cannot review the Commission's implicit determination that it did not attribute injury from the overall market decline to the subject imports.

> It is paramount in this regard that the Commission 'examine other factors to ensure that it is not attributing injury from other sources to the subject imports.' SAA at 851-52. Especially where the Commission finds one main cause of injury to the domestic industry, this analysis inherently necessitates some degree of comparison between the injurious effects of the subject imports and other unrelated factors because, in some cases, other sources of injury 'may have such a predominant effect in producing the harm as to . . . prevent the [subject] imports from being a material factor.'

*Taiwan Semiconductor Indus. Assn. et al v. United States*, 23 CIT 410, 416, 59 F.Supp.2d 1324, 1331 (1999), *aff'd*, 266 F.3d 1339 (Fed. Cir. 2001), *quoting Gerald Metals, Inc. v. United States*, 22 CIT 1009, 1014 n.8, 27 F. Supp.2d 1351, 1355 n.8 (1998); Statement of Administrative Action, H.R. Doc. No. 316, 103rd Cong., 2nd Sess. (1994), *reprinted in* Uruguay Round Agreements Act Legislative History, Vol. VI, at 852 ("SAA") (Commission must "examine other factors to ensure that it is not attributing injury from other sources to the subject imports"). "[T]he Commission would abuse its discretion if, by ignoring a relevant economic factor that it could consider under section 1677(7)(B)(ii), the Commission 'entirely failed to consider an important aspect of the problem.'" *Mittal Steel Point Lisas Ltd. v. United States*, 542 F.3d 867,

872-73, *quoting Motor Vehicle Mfrs. Assn. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). As the court explained in *Hynix Semiconductor v. United States*, 30 CIT 1208, 431 F.Supp.2d 1302 (2006):

> The Federal Circuit, in affirming the CIT's *Taiwan Semiconductor* case, provided the following instructions for the ITC regarding causation: "[T]he [ITC] need not isolate the injury caused by other factors from injury caused by unfair imports. . . . *Rather, the [ITC] must examine other factors to ensure that it is not attributing injury from other sources to the subject imports*." *Taiwan Semiconductor Indus. Ass'n v. ITC*, 266 F.3d 1339, 1345 (Fed. Cir. 2001) (quoting H.R. Doc. No. 103-316, vol. 1, at 852) (alteration in original). The ITC is charged with the burden of an earnest investigation into whether other factors render the subject imports a tangential, *de minimis* cause of the domestic industry's material injury. An affirmative material injury determination does not rest on substantial evidence when the ITC fails to analyze compelling arguments that purport to demonstrate the comparatively marginal role of subject imports in causing that injury.

*Hynix*, 30 CIT at 1226-27, 431 F.Supp.2d at 1317 (footnote omitted).

The court finds that the Commission's findings regarding the impact of the subject imports on the domestic industry is unsupported by substantial evidence because the Commission failed to adequately consider the effect that the severe disruption of the home building and remodeling industries had on the domestic like product industry. The court remands this action to the Commission to re-evaluate its findings relating to the impact of the subject imports in comparison with the effects of the severe downturn in the home building and remodeling markets during the POI, while specifically addressing the economic impact issues identified as affecting the domestic like product industry in the *Dissenting Views*.

### C. **"By Reason Of" and "But-For" Causation**

The parties disagree over the standard applicable by the Commission in making its material injury determination. The statute directs the Commission to "make a final

determination of whether . . . an industry in the United States . . . is materially injured . . . by reason of [the subject] imports[.]" 19 U.S.C. § 1673d(b). The material injury must be "harm which is not inconsequential, immaterial, or unimportant." 19 U.S.C. § 1677(7)(A).

After assessing whether the volume, price effects, and impact of the subject imports on the domestic industry are significant, the statutory "by reason of" language implicitly requires the Commission to "determine whether these factors as a whole indicate that the [subject] imports themselves made a material contribution to the injury." *Gerald Metals*, 22 CIT at 1014, 27 F. Supp.2d at 1355 (1998). "[T]he statute requires adequate evidence to show that the harm occurred 'by reason of' the LTFV imports, not by reason of a minimal or tangential contribution to material harm caused by LTFV goods." *Gerald Metals, Inc. v. United States*, 132 F.3d 716, 722 (Fed. Cir. 1997). Our appellate courts have explained that the "by reason of" language requires application of the "but-for" legal causation standard.

> An important element of the causation inquiry – not necessarily dispositive, but important – is whether the subject imports are the 'but-for' cause of the injury to the domestic industry. As the Supreme Court has explained,
>
> But-for causation is a hypothetical construct. In determining whether a particular factor was a but-for cause of a given event, we begin by assuming that that factor was present at the time of the event, and then ask whether even if that factor had been absent, the event would have transpired in the same way.
>
> *Price Waterhouse v. Hopkins*, 490 U.S. 228, 240, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989).
>
> In this context, that principle requires the finder of fact to ask whether conditions would have been different for the domestic industry in the absence of dumping.

*Mittal*, 542 F.3d at 876. The Commission addressed causation in its *Views*. "Although the statute requires the Commission to determine whether the domestic industry is 'materially

injured by reason of' unfairly traded imports, it does not define the phrase 'by reason of,' indicating that this aspect of the injury analysis is left to the Commission's reasonable exercise of its discretion."[7] The Commission decided that under the *Gerald Metals* line of cases, "we do not consider ourselves required to apply the replacement/benefit test that was included in Commission opinions subsequent to *Bratsk*."[8] The Commission concluded that "[t]he question of whether the material injury threshold for subject imports is satisfied notwithstanding any injury from other factors is factual, subject to review under the substantial evidence standard." *Views* at 22.

        The Commission explains in its brief before this court that it "did not attribute injury to the domestic industry from non-subject imports to [the] subject imports," thus ensuring "that there was a sufficient causal nexus between [the] subject imports and the material injury to the domestic industry." Deft's Br. at 28-29. But aside from citing to contemporaneous economic data, the Commission cites to little evidence on the record that connects the subject imports to the condition of the domestic industry. *Gerald Metals*, 132 F.3d at 719 ("a showing that economic harm to domestic industry occurred when LTFV imports were also on the market is not enough to show that the imports caused a material injury.") The Commission needs to ensure that the subject imports, as compared to other economic factors affecting the domestic

---

[7]    *Views* at 18. The Commission misunderstands its role in applying the statutory "by reason of" standard (explained in *Gerald Metals* and *Mittal*). While the Commission may, in its discretion, make findings regarding whether the standard is met or choose an evaluation methodology suited to a particular case, its discretion does not extend to defining the standard itself.

[8]    *Views* at 22. Commissioner Pinkert dissented from this portion of the Commission's analysis. *Views* at 20 n.87.

industry, were not a but-for cause of the injury. That is not the end of the analysis, though, because the statute requires that the injury caused be "not inconsequential, immaterial or unimportant." 19 U.S.C. § 1677(7)(A). Thus, the Commission must determine whether the subject imports were a but-for cause of injury, as well as whether the quantum of injury was material or consequential. The court finds that the legal and factual analysis performed by the Commission in this instance misses the mark and thus the conclusion of material injury is not supported by substantial evidence.

Plaintiffs argue that the Commission erred by not applying a "but-for" replacement benefit analysis similar to that applied in *Bratsk Aluminum Smelter v. United States*, 444 F.3d 1369 (Fed. Cir. 2006), because non-subject imports were in the market and potential existed for them to increase to replace subject imports. Pl's Br. at 13-15. The court disagrees that the statute in conjunction with our appellate precedent requires us to restrict application of the "but-for" causation standard to a particular factual scenario, or a particular aspect of the material injury inquiry. Rather, the statutory "by reason of" standard clearly applies to the overall causation analysis to be performed by the Commission. In any event, the court finds plaintiff's "replacement" argument speculative and not well-suited to the facts in this case.[9]

Under applicable law, the Commission must reconsider its findings. In particular, the Commission must perform a "but-for" causation analysis of whether the subject

---

[9] The court reserves judgment on whether the Commission should find whether MLWF is a "commodity product" for purposes of a *Bratsk*-type inquiry in light of the Commission's finding that the product is highly substitutable. *See*, *e.g.*, Staff Report CR 507 at I-16, n.37 (noting "over 80 percent of U.S. producers, almost one half of responding importers, and over two-thirds of responding purchasers reported that MLWF produced in the U.S. and MLWF imported from China are at least 'frequently' used interchangeably.")

imports materially injured the domestic industry. Paraphrasing the standard summarized in *Price Waterhouse*, the Commission should "begin by assuming that [the subject imports were] present at the time of [the POI], and then ask whether even if [the subject imports] had been absent, [the performance of the domestic industry] would have transpired in the same way". *Price Waterhouse*, 490 U.S. at 240. The court directs the Commission to consider the impact of the subject imports "within the context of the business cycle and conditions of competition that are distinctive to the affected industry", while considering whether the subject imports had a material "but-for" impact on the domestic industry. 19 U.S.C. § 1677(7)(C)(iii).

## IV.    Conclusion

For the foregoing reasons, the court finds that the Commission's decision is not supported by substantial evidence. Accordingly, it is hereby

ORDERED that this action is remanded to the International Trade Commission to reconsider its finding that producers of hardwood plywood for flooring cannot be included in the domestic industry. On remand the Commission shall reopen the record to identify domestic hardwood plywood manufacturers and evaluate whether they make product that is used for flooring. The Commission may (a) issue additional questionnaires to domestic producers of hardwood plywood that fits within the MLWF scope definition and revise its findings and conclusions based upon the record evidence so adduced, or (b) further explain its rationale for excluding domestic hardwood plywood producers from the investigation where their product fits within the facial terms of the MLWF scope. The Commission must share any new record information and or proposed explanation with the parties and provide them with an opportunity

to address that information or explanation as it applies to the record evidence. The Commission shall then make revised factual findings if necessary based on the additional record evidence or its revised explanation; and it is further

ORDERED that the Commission shall make specific findings on the effect of the subject imports on the statutory price suppression and depression factors, discussing not only the factors cited in the Commission's *Views*, but also those economic issues identified by the *Dissenting Views*; and it is further

ORDERED that the Commission shall reconsider the impact of the subject imports on the domestic industry "within the context of the business cycle and conditions of competition that are distinctive to the affected industry", with particular reference to the economic impact issues identified as affecting the domestic like product industry in the *Dissenting Views*; and it is further

ORDERED that the Commission shall make and support a finding of whether the subject imports had a material "but-for" impact on the domestic like product industry; and it is further

ORDERED that the Commission shall file the remand results with the court on or before September 30, 2013; and it is further

ORDERED that the parties shall file a proposed scheduling order on or before October 31, 2013, for the submission of comments (with page limits) on the remand results.

    /s/ R. Kenton Musgrave
    R. Kenton Musgrave, Senior Judge

Dated: March 20, 2013
 New York, New York